Day, C. J.
On the 13th day of October, 1852, the plaintiffs subscribed one hundred thousand dollars to the capital stock of the-Dayton and Cincinnati Railroad Company, to be paid in specified real estate in the city of Cincinnati, valued at that sum.
On the 19th day of March, 1853, the plaintiffs, in consideration of such subscriptions to said stock, conveyed the property to the-company, and received therefor certificates of stock to the amount, of seventy-five thousand dollars, the remaining twenty-five thousand dollars of the amount subscribed being retained by the company to secure an incumbrance on the property.
On the 28th day of December, 1854, the railroad company, for the consideration of sixty thousand dollars, conveyed the property to the defendants.
The plaintiffs brought this suit to recover back the property,, claiming that their conveyance thereof to the company was void,, on the ground that the company was not authorized to take subscz’iptions to its capital stock izz real estate, and therefore had no< capacity to receive the conveyance.
The principal question presented, then, is whether the company was authorized to take subscriptions to its capital stock in real-estate.
The company was chartered in 1847, by a special act of the legislature, and was thereby “made capable in law to have, purchase, 165] *receive, possess, sell, convey, and enjoy real and personal! estate, and retain them, all such lands, tenements, and hereditaments as shall be requisite and actually necessary for their accommodation and convenience in the ti-ansaction of their business.”
By the fourteenth section of “an act regulating railroad companies,” passed February 11, 1848, it was enacted as follows:
“ Sec. 14. Such company m'ay acquire, by purchase or gift, any lands in the vicinity of said road, or through which the same may pass, so far as may bo deemed convenient or necessary by said company to secure the right of way, or such as may be granted to *166 aid in the construction of such road, or be given by way of subscription to the capital stock, and the same to hold or convey in such manner as the directors may prescribe; and all deeds of conveyances made by such company shall be signed by the president,, under the seal of the corporation ; and any existing railroad corporation may accept the provisions of this section, the five preceding sections of this act, or either of them, and after such accejrfcance,. all conflicting provisions of their respective charters shall be null and void.”
• It is conceded by counsel for the plaintiffs, that, if this section is applicable to this company, it conferred the requisite legal capacity to sustain all the conveyances of the real estate in question. But it is claimed that the powers thus conferred, are not available to the company, for the reason that it did not “ accept the provisions of this section.”
If, then, the facts disclosed by the record, were sufficient, as between these parties, to warrant the court below in finding that the “ provisions of this section ” were accepted by the company, the judgment must be affirmed.
When a legislature confers upon a specific corporation additional beneficial powers, without prescribing any mode for their acceptance, it has been held, as a general rule, that the exercise of such powers is sufficient evidence of their acceptance.
It is difficult to see a good reason why the same rule should not obtain, when the powers conferred are by a general law, *and [166 are made applicable to any one of a class of corporations that may accept its provisions.
The company, under its original charter, enjoyed, substantially, all the privileges conferred by this section. That of receiving real estate “ by way of subscription to the capital stock,” was not expressly granted by the original charter. By accepting tlie provisions of this section that right was rendered clear and express. Nothing further could be gained. An acceptance of that privilege was all the company needed of that section. The use of that power was all that could be referred exclusively to the exercise of the privileges granted by this section. The company proceeded to use and enjoy the only additional power thus conferred.
The exercise of this power has ever been acquiesced in by the stockholders and officers of of the company. This affords strong evidence of the acceptance of the power conferred by that section. *167 It was accepted actually and practically, if not expressly. Nothing was wanting but the form of acceptance, and that, so far as essential, where no form was required, maybe fairly implied, under the circumstances of this case.
It is well settled, that the acceptance of an amendment to a charter, may be by parol, in the absence of any provision to the contrary. In this section no form or mode of acceptance is prescribed. All that is required to confer the power granted, is an acceptance thereof. The use and exercise of the power granted, was an acceptance of it in fact, as much as it would have been if it had been expressed in words. It would be a difference in form only; the substance is the same.
This view is strengthened by the consideration that the statute of 1848 was a general law for the creation and regulation of railroad companies, and the legislature made provision for the companies then existing to have the same privileges enjoyed by those to bo created under that law, if they saw fit to accept them. This view is also further strengthened by the fact, that the legislature, so generally, upon the amendment of charters, prescribes the manner of acceptance, and the mode of preserving the evidence of such acceptance.
It is claimed that the acceptance of the provisions under consideration, to be available to the company, coii'ld be made by 167] *the stockholders only. The provision of the section is that "the “ corporation ” may accept. Whatever is meant by the word corporation,” the use of the power by the acting corporation, with the uninterrupted acquiescence of all parties interested in the company, would seem to be sufficient evidence of acceptance by the “ corporation,” in any sense that it was intended to mean.
From the nature and character of the privileges conferred in this section, ther<_ would seem to be no necessity for referring the question of their acceptance to the stockholders. There can be little doubt but that the legislature intended the acceptance should be by the corporate body, and not by the individual corporators. The ■charter of the company empowers the directors “ to transact all business of the corporation.” The “corporation” was authorized to accept the provisions of this section. The acceptance was, then, business of the corporation, which the directors were made “ competent to transact.”
After the passage of the act of 1848, and before the real estate *168 .subscription of tbe plaintiffs to the stock of the company, on the 25th clay of March, 1852, the directors of the company entered upon their records a resolution that “ subscriptions to the capital -stock may be made in real estate.” This, though not in itself, an express or formal acceptance of the provisions of the 14th section of the act of 1848, is evidence of either a former acceptance thereof, ■or of an acceptance by exercising- the powers therein granted ; for, if the company had no power to take such subscriptions except -under that section, this action of the directors, as -well as that of the corporation in receiving the subscriptions, must fairly be referred to the power therein granted, and affords evidence, well nigh ■conclusive, of an actual acceptance of the power by the corporate ■authority.
But suppose the foregoing positions be doubted : how stands the •case between these parties ?
The plaintiffs were stockholders in the company from the beginning, and, much of the time, one or both were on the board of directors. They, surely, do not stand in a position to claim that ■they, as stockholders never accepted the power ^tendered to [168 the company, to take real estate subscriptions to its stock, after having exercised it themselves. One of them was a director when the subscription was made, and when their deed, in pursuance thereof, was delivered to the company. This is a clear admission that the power, under which the company acted, had been accepted in some form.
Moreover, with a full knowledge of all the transactions of the ■company, they stood by and saw the campany liquidate a large debt of their own secured on the property convoyed to the company, i-otained the stock issued on the subscription until more than a year after the commencement of this suit, and, in the meantime, saw the company sell the property to a party who bought and paid .a large sum therefor, and ever acquiesced in all these transactions for a period of ten years, and until the company became bankrupt, .and had abandoned the purpose for which it was organized. To permit them to come in now and repudiate all their acts upon the faith of which the company and the defendants, in good faith, acted .and expended a largo amount of money, would amount to a great wroñg if not a positive fraud. They virtually admit the disputed power as long as it is available for their purposes, but deny it when *169 the power accepted and used by them becomes utterly worthless- and proves to be a misfortune to them.
It is clear that all the parties to this suit acted upon the mutual understanding that the company possessed, and was exercising the-power to take real estate subscriptions to its stock. The company had this power if it had been accepted by the corporation. These parties knew all about the transactions of the company. Their acts-amounted to an admission that the power had been accepted ; and when the one party suffered the other to act on such admission, it. might well be held conclusive against that party.
At all events, wc think the court below, upon the facts of this-case, as against the plaintiffs, might well find that there was an acceptance by the company of the powers conferred by the 14th section of the act of 1848, and that, therefore, there was no want of power or capacity on the part of the railroad company to take and convey the real estate in question.
169] *There is, then, a plain ground upon which the holdings and judgment of the court of common pleas may be sustained, and this renders it unnecessary to consider the other questions discussed in argument.

Judgment affirmed..

Brinkerhoff, Scott, Welch, and White, JJ., concurred.